## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JACOB HADDEN AND RAMON ACOSTA, on behalf of themselves, and all other plaintiffs similarly situated, known and unknown, | ) ) ) ) ) | No. 1:21-cv- |
| Plaintiff, | ) ) ) | Hon. District Judge |
| v. | ) ) ) | Hon. Magistrate Judge |
| QUICK KEY, INC., AN ILLINOIS CORPORATION, GAL DRUCKER, INDIVIDUALLY AND ORON NURIEL, INDIVIDUALLY | ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) | |

## COMPLAINT

NOW COME Plaintiffs, **JACOB HADDEN AND RAMON ACOSTA,** ("Plaintiffs"), by and through their attorneys, JOHN W. BILLHORN AND SAMUEL D. ENGELSON OF BILLHORN LAW FIRM, and for their Complaint against Defendants, **QUICK KEY, INC., GAL DRUCKER, INDIVIDUALLY, AND ORON NURIEL, INDIVIDUALLY** (each a "Defendant", collectively the "Defendants"), state as follows:

## I.    NATURE OF ACTION

1.      This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq*, the Chicago Minimum Wage Ordinance ("CMWO"), § 1-24-10 of the Municipal Code of Chicago and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*

II.    **JURISDICTION AND VENUE**

2.      Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental state and municipal statutory claims, pursuant to 28 U.S.C. §1367. Venue lies in the Northern District of Illinois in that during all times relevant to the employment relationship, Plaintiffs performed work in this district and are each a resident of this district and Defendants are or were engaged in business in this district.

III.   **THE PARTIES**

3.      Defendant, **QUICK KEY, INC.** ("QKI") is a business that provides locksmith services to corporate and residential customers, including emergency lock-out services, lock and key installations, re-keying of locks, repairs, etc. QKI maintains three locations in the Northern District of Illinois, located at: 1451 W Irving Park Rd. in Chicago; 600 S. County Farm Rd. Unit 120 in Wheaton; and 1028 W Devon Ave. in Elk Grove Village. QKI is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after reasonably inquiry, satisfies the minimum annual gross sales dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii). During all relevant times, Defendant was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

4.      Defendants, **GAL DRUCKER AND ORON GURIEL** are the owners of QKI (any reference to "QKI" in this Complaint shall include Drucker and Guriel, such that "QKI" encompasses and refers to all Defendants)**.** In their capacity as owners and operators of QKI, Drucker and Guriel were vested with the authority to implement and carry out the

wage and hour practices of QKI. Plaintiffs were directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Drucker and Guriel, who in turn responded to those communications with the authority described above. Thus, at all times relevant hereto, Drucker and Guriel were acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, are each an "employer". and at all times relevant hereto were acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore as defined under both the federal and state statutes relied upon, are "employers".

5.     Plaintiff, **JACOB HADDEN** (hereinafter referred to as "Hadden") is a former employee of Defendants who was employed by Defendants as a locksmith from approximately September 2018 to October 2020. Hadden was primarily based out of Defendants' 1451 W Irving Park Rd. location. Hadden performed locksmith duties as assigned by QKI and their dispatchers. During Hadden's entire employment, QKI compensated Hadden on an improper salary basis and denied him overtime pay for hours worked over 40 per work week. Additionally, for a portion of Hadden's employment, QKI improperly classified him as an independent contractor while continuing to pay Hadden via improper salary. Lastly, QKI improperly deducted certain expenses from Hadden's pay without receiving proper, contemporaneous authorizations from Hadden, including failure to use compliant deduction authorization forms.

6.     Plaintiff, **RAMON ACOSTA** (hereinafter referred to as "Plaintiff" or "Acosta") is a former employee of Defendants who was employed by Defendants as a locksmith from approximately June 2016 to December 2016 and December 2017 to October 2020. Acosta

was primarily based out of Defendants' 1451 W Irving Park Rd. location. Acosta performed locksmith duties as assigned by QKI and their dispatchers. During Acosta's entire employment, QKI compensated Acosta on an improper salary basis and denied him overtime pay for hours worked over 40 per work week. Additionally, for a portion of Acosta's employment, QKI improperly classified him as an independent contractor while continuing to pay Acosta via improper salary.

7.      All other unnamed Plaintiffs, known and unknown (hereinafter referred to as "members of the Plaintiff Class" or "similarly situated Plaintiffs"), are past or present employees who work or worked for Defendants and were also paid an improper salary and denied overtime pay for hours worked in excess of forty (40) in a work week, improperly classified as a 1099 independent contractor and suffered improper, unauthorized deductions from pay.

8.      As employees performing duties for an enterprise engaged in commerce, the named Plaintiffs and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

IV.     **STATUTORY VIOLATIONS**

         **Fair Labor Standards Act**

9.      Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiffs as an opt-in representative or collective action, on behalf of themselves and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.* and §251 *et seq.* Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

**Illinois Minimum Wage Law**

10.     Pursuant to the Illinois Minimum Wage Law, 820 ILCS §105/1 *et seq.*, Count IV of this action is brought by Plaintiffs to recover unpaid back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiffs herein under the IMWL are proper for certification under Federal Rule of Civil Procedure 23.

**Chicago Minimum Wage Ordinance**

11.     Pursuant to the Chicago Minimum Wage Ordinance ("CMWO"), § 1-24-10 of the Municipal Code of Chicago, Count V of this action is brought by Plaintiffs to recover unpaid back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by Plaintiffs herein under the CMWO are proper for certification under Federal Rule of Civil Procedure 23.

**Illinois Wage Payment and Collection Act**

12.     Pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS §115/1 *et seq.*, Count VI of this action is brought by Plaintiffs to recover from Defendants unauthorized deductions taken on or after the date ten (10) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count VI. The claims asserted by Plaintiffs herein under the IWPCA are proper for certification under Federal Rule of Civil Procedure 23.

## V.     FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

13.     Plaintiffs, at all times pertinent to the cause of action, were employed by Defendants, said employment being integral and indispensable to Defendants' business.

14.     Plaintiffs, on a regular basis within the dates of employment referenced above, worked in excess of forty (40) hours in a workweek without pay at a rate of time and

one-half for such hours pursuant to the requirements of the federal and state statutes relied upon herein.

15.     While employed by QKI, Plaintiffs spent many of their working hours working for Defendants' benefit while within the City of Chicago, including at Defendants' shop located at 1451 W Irving Park Rd. Additionally, many, if not most of, Plaintiffs' locksmith jobs were performed at residential and business locations within the City of Chicago as assigned by Defendants and their dispatchers.

16.     Each month, Plaintiffs worked at numerous job sites and locations that were physically located within the City of Chicago. On a regular basis, Plaintiffs worked at least two hours while physically present in the City of Chicago during two-week periods and were at all times "Covered Employees" as defined by the CMWO.

17.     Defendants, as corporations and individuals employing "Covered Employees" as set forth above, were each an "Employer" as defined by the CMWO. Additionally, because Defendants were operating and engaging in performance of a professional trade services within the City of Chicago, they were subject to the license requirements set forth by the Municipal Code of Chicago.

18.     Upon information and belief, QKI was subject to City of Chicago licensing requirements and thus possessed the appropriate license to operate and perform locksmith services within the City of Chicago. Plaintiffs were covered employees working for covered employers under the CMWO.

19.     Hadden was employed by QKI from approximately September 2018 to October 2020.

20.     During Hadden's entire employment with QKI, QKI paid Hadden a salary intended to compensate him for all hours worked. However, Hadden's job duties did not qualify him for any of the salary exemptions established by the FLSA, IMWL or CMWO.

21.     Hadden was employed as a locksmith. As a locksmith, Hadden performed locksmith duties (emergency lock-out services, installations, repairs, etc.) for QKI's residential and business customers. Hadden's jobs were assigned to him on a rolling basis by QKI and its dispatchers, who would inform Hadden of the customer's name, address and work required. Hadden would then be expected to travel to each assignment.

22.     For the majority of Hadden's employment, Hadden was typically scheduled for 12-hour shifts six (6) days per week. The shifts were 9:00 a.m. to 9:00 p.m. or 11:00 a.m. to 11:00 p.m. Hadden was not permitted to turn down any assignments given to him by a QKI dispatcher. At times, Hadden worked in excess of his assigned 12-hour shift because QKI required that Hadden answer to jobs assigned to him even at the very ends of his shifts (i.e. 8:55 p.m. or 10:55 p.m.), such that Hadden would work more than 12 hours on certain days. During the last six months of Hadden's employment, he typically worked 11:00 a.m. to 9:00 p.m.

23.     Hadden typically worked at least 60 hours per week, and at times worked 72 or more hours in a week but did not receive overtime compensation of one and one-half times his hourly rate of pay for such hours worked in excess of 40 in individual work weeks.

24.     During Hadden's entire employment, Hadden was paid most of his compensation by salary. Throughout the duration of his employment, Hadden received $1,000 in salary paid every two weeks via payroll check. In addition to his bi-monthly salary, Hadden also received commissions equal to 10% of the profits generated from all

jobs complete within each pay period. The amounts of Hadden's commissions varied.

25.     As a result of Defendants' improper salary classification, Hadden never received any compensation, let alone an overtime premium, for hours worked in excess of 40 in a work week.

26.     Additionally, for approximately the first few months of Hadden's employment, QKI improperly designated Hadden as a 1099 independent contractor and paid him through a salary and commission structure as detailed above. In approximately December 2018 or January 2019, QKI reclassified Hadden as a W2 employee and continued the same compensation plan. During the time Hadden was improperly classified as a 1099 independent contractor, QKI improperly denied Hadden overtime wages and contributions to Social Security, Medicare, Medicaid, unemployment insurance, etc.

27.     Although Hadden worked at least 60 hours for the duration of his employment, QKI did not keep contemporaneous records of the time worked by Hadden or other locksmiths in its employ. Instead, QKI paid Hadden a fixed salary and inserted "0.00" in the "hours/units" column of Hadden's paystubs.

28.     Additionally, QKI made improper deductions from the pay of Hadden and other similarly situated locksmiths. QKI would deduct business expenses and other amounts incurred by Hadden and other locksmiths while they performed locksmith duties on behalf of the Defendant-company. QKI routinely deducted items such as parking tickets, traffic tickets, etc. without providing Hadden, or any other locksmiths, with a deduction authorization form as required by law and the IWPCA.

29.     Throughout the duration of Hadden's employment, he was paid an improper salary that was intended by QKI to compensate Hadden for all hours worked, including

overtime hours worked in excess of 40 in individual work week. As detailed above, Hadden, nor any locksmith employed by QKI, performed duties that would satisfy any exemption permitted by the FLSA, IMWL or CMWO. Rather, Hadden and locksmiths employed by QKI should have been paid hourly and received one and one-half their hourly rates of pay for all hours worked in excess of 40 in individual work weeks. Further, commissions earned by Hadden and other locksmiths should have been considered in the calculations of their regular hourly rates of pay and, in turn, their overtime compensation as required by C.F.R. §778.117, 208.

30.   At the start of Hadden's employment, Hadden entered into a "Locksmith Employment Agreement", dated September 24, 2018 and attached hereto as **Exhibit A** which, in pertinent part, provided:

> 11.   ARBITRATION.  Any and all disputes between the Parties, concerning any alleged breach of this Agreement, or arising out of or relating to the interpretation of this Agreement for the Party's performance of their respective obligations under this Agreement, shall be resolved by Arbitration. Arbitration shall be the sole and exclusive remedy for such matters.  The Arbitration shall be conducted in accordance with the rules of the American Arbitration Association.  The arbitrator's award shall be final and binding. The cost of arbitration, including attorney's fees, shall be paid by the losing party.

31.   Plaintiff Hadden's wage and hour allegations, as plead herein, do not "concern[ ] any alleged breach of [that] Agreement", nor do Hadden's wage and hour allegations arise "out of or [relate] to the interpretation of the Agreement for the Party's performance of their respective obligations under this Agreement". Hadden's allegations herein challenge the legal sufficiency of Defendant's compensation policies and practices, and thus, the arbitration provisions of the "Locksmith Employment Agreement" do not preclude Hadden's claims as plead herein.

32.     Acosta was employed by QKI from approximately June 2016 until approximately December 2016 and again from approximately December 2017 to October 2020.

33.     During Acosta's entire employment with QKI, QKI paid Acosta a salary intended to compensate him for all hours worked. However, Acosta's job duties did not qualify him for any of the salary exemptions established by the FLSA, IMWL or CMWO.

34.     Acosta was employed as a locksmith. As a locksmith, Acosta performed locksmith duties (emergency lock-out services, installations, repairs, etc.) for QKI's residential and business customers. Acosta's jobs were assigned to him on a rolling basis by QKI and its dispatchers, who would inform Acosta of the customer's name, address and work required. Acosta would then be expected to travel to each assignment.

35.     After becoming re-employed by QKI in approximately December 2017 until the end of his employment in October 2020, Acosta was typically scheduled six (6) days per week. The shifts were 8:00 a.m. to 6:00 p.m. Monday through Friday and 8:00 a.m. to 2:00 p.m. on Saturday. Acosta was not permitted to turn down any assignments given to him by a QKI dispatcher. At times, Acosta worked in excess of his assigned shifts because QKI required that Acosta answer to jobs assigned to him even at the very ends of his shifts (i.e. 5:55 p.m. or 2:55 p.m.), such that Acosta would work more than ten (10) hours on certain days.

36.     Acosta typically worked at least 56 hours per week, and at times worked more but did not receive overtime compensation of one and one-half times his hourly rate of pay for such hours worked in excess of 40 in individual work weeks.

37.     During Acosta's second stint with QKI, Acosta was paid most of his compensation by salary. Acosta received $750 in salary paid every two weeks via payroll check. In addition to his bi-monthly salary, Acosta also received commissions equal to 5% of the profits generated from all jobs complete within each pay period. The amounts of Acosta's commissions varied.

38.     As a result of Defendants' improper salary classification, Acosta never received any compensation, let alone an overtime premium, for hours worked in excess of 40 in a work week.

39.     Additionally, for approximately the first few months of Acosta's second stint of employment at QKI, QKI improperly designated Acosta as a 1099 independent contractor and paid him through a salary and commission structure as detailed above. In approximately March or April of 2018, QKI reclassified Acosta as a W2 employee and continued the same compensation plan through the remainder of his employment. During the time Acosta was improperly classified as a 1099 independent contractor, QKI improperly denied Acosta overtime wages and contributions to Social Security, Medicare, Medicaid, unemployment insurance, etc.

40.     Although Acosta worked at least 56 hours for the duration of second stint of employment with QKI, QKI did not keep contemporaneous records of the time worked by Acosta or other locksmiths in its employ. Instead, QKI paid Acosta a fixed salary and inserted "0.00" in the "hours/units" column of Acosta's paystubs.

41.     Throughout the duration of Acosta's employment, he was paid an improper salary that was intended by QKI to compensate Acosta for all hours worked, including overtime hours worked in excess of 40 in individual work week. As detailed above, Acosta,

nor any locksmith employed by QKI, performed duties that would satisfy any exemption permitted by the FLSA, IMWL or CMWO. Rather, Acosta and locksmiths employed by QKI should have been paid hourly and received one and one-half their hourly rates of pay for all hours worked in excess of 40 in individual work weeks. Further, commissions earned by Acosta and other locksmiths should have been considered in the calculations of their regular hourly rates of pay and, in turn, their overtime compensation as required by C.F.R. §778.117, 208.

42.    At the start of Acosta's employment, in approximately June 2016, Acosta entered into a "Locksmith Employment Agreement". Acosta is not in possession of an executed copy of the agreement entered into with QKI and Defendants. However, Acosta believes that he indeed enter into a Locksmith Employment Agreement, which like Hadden's agreement attached as Exhibit A, provided:

> 11.  ARBITRATION.  Any and all disputes between the Parties, concerning any alleged breach of this Agreement, or arising out of or relating to the interpretation of this Agreement for the Party's performance of their respective obligations under this Agreement, shall be resolved by Arbitration. Arbitration shall be the sole and exclusive remedy for such matters.  The Arbitration shall be conducted in accordance with the rules of the American Arbitration Association.  The arbitrator's award shall be final and binding. The cost of arbitration, including attorney's fees, shall be paid by the losing party.

43.    Plaintiff Acosta's wage and hour allegations, as plead herein, do not "concern[ ] any alleged breach of [that] Agreement", nor do Acosta's wage and hour allegations arise "out of or [relate] to the interpretation of the Agreement for the Party's performance of their respective obligations under this Agreement". Acosta's allegations herein challenge the legal sufficiency of Defendants' compensation policies and practices,

and thus, the arbitration provisions of the "Locksmith Employment Agreement" do not preclude Acosta's claims as plead herein.

44.     To the extent any putative Class members identified and ultimately subject to joinder, have entered into the same or a similar employment agreement as the Named Plaintiffs herein, said same or similar employment agreement would also fail to prohibit any such putative Class member's wage and hour claims as plead herein.

45.     Based upon information and belief of Hadden and Acosta, QKI paid all locksmiths across all three Chicagoland locations via improper bi-monthly salary with some commissions rather than hourly rates with overtime compensation.

46.     The total number of hours worked by Plaintiffs and members of the Plaintiff Class, and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Defendants, in that Defendants recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the extent Defendants lack the records required by 29 CFR Part 516, Plaintiffs and the Plaintiff class will be capable of providing reasonable estimates of that time, as permitted by law.

47.     The claims brought herein by the named Plaintiffs are based on non-compliant practices and policies implemented by the Defendants and are identical or similar to the claims of other past and present employees who were subject to the same non-compliant policies and practices alleged herein. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-47.    Paragraphs 1 through 47 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 47 of this Count I.

48.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, the named Plaintiffs, and all other Plaintiffs similarly situated, known and unknown, are entitled to compensation for all hours worked and compensation at a rate not less than one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours per workweek in any week during the two (2) years preceding the filing of this action.

49.    Defendants have, during certain times relevant hereto, failed and refused to pay compensation to their employees including the named Plaintiffs, and all other Plaintiffs similarly situated, known and unknown, as described above.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b)    prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c)    Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the Fair Labor Standards Act; and,

(d)    such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-49.  Paragraphs 1 through 49 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 49 of Count II.

50.  Defendants' actions as complained of above were done with Defendants' knowledge that the compensation policies and practices at issue were in violation of the statutes alleged, or with a reckless disregard for whether or not the policies and practices were in violation of those statutes. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to salary classification under the state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

51.  Pursuant to the Fair Labor Standards Act, Plaintiffs and all other employees similarly situated, past or present, are entitled to compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40), in the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding: back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(a)  prejudgment interest with respect to the amount of unpaid overtime compensation;

(b)  Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)     such additional relief the Court deems appropriate under the circumstances.

## COUNT III

### LIQUIDATED DAMAGES
### UNDER THE FAIR LABOR STANDARDS ACT

1-51.    Paragraphs 1 through 51 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 51 of Count III.

52.    In denying the named Plaintiffs and members of the Plaintiff Class compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds. Through legal counsel as well as industry experience and custom, Defendants possessed ample access to the regulations and statutory provisions relating to salary classification under the state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

53.    The named Plaintiffs and all other past and present employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)     liquidated damages equal to the amount of all unpaid compensation;

(b)     Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)     such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

1-53.    Paragraphs 1 through 53 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 53 of this Count IV.

54.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Illinois Minimum Wage Law, 820 ILCS §115/1 *et seq.*

55.    The Illinois Minimum Wage Law provides that an employer who fails to pay the required amount of wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid wages and for (a) an additional statutory interest penalty of 2% amount of the amount of such underpayments for each month following the date such underpayments that remain unpaid through February 18, 2019 and (b) treble the amount of the underpayments and a statutory interest penalty in the amount of 5% of the underpayments each month for damages incurred thereafter.

56.    Defendants' failure to pay compensation as described above, has been willful and/or in bad faith.

57.    Plaintiffs seek certification of the Illinois Minimum Wage Law violations alleged herein pursuant to Federal Rule of Civil Procedure 23.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order:

(a)    declaring and decreeing Defendants' compensation practices as described herein, and such other violations which may come to light during the prosecution of this matter, in violation of the provisions of the Illinois Minimum Wage Law;

(b)    awarding an amount of damages, to be shown by the evidence, to which Plaintiffs and other members of the Plaintiff Class are entitled;

(c)    allowing this Court to retain jurisdiction of the case until such time it is assured Defendant has remedied the compensation policies and practices complained of herein and are determined to be in full compliance with the law;

(d)     directing Defendants to pay to Plaintiffs' reasonable attorneys' fees, costs, and litigation expenses, as provided by statute;

(e)     for such additional relief the Court deems just and appropriate under the circumstances.

## COUNT V

### SUPPLEMENTAL MUNICIPAL CLAIM
### VIOLATION OF THE CHICAGO MINIMUM WAGE ORDINANCE

1-57.   Paragraphs 1 through 57 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 57 of this Count V.

58.     Plaintiffs, and members of the Plaintiff Class, are each an "employee" under the CMWO§ 1-24-10 of the Municipal Code of Chicago and not exempt from the overtime wage provisions of the CMWO § 1-24-050.

59.     Defendants are each an "employer" as defined in the CMWO§ 1-24-10.

60.     Under § 1-24-040, for all weeks during which Plaintiffs and members of the Plaintiff Class worked more than forty (40) hours in the three (3) years preceding the filing of this Complaint, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

61.     Defendant's failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of § 1-24-040.

62.     Plaintiffs seeks certification of the Chicago Minimum Wage Ordinance violations alleged herein pursuant to Federal Rule of Civil Procedure 23 as to all similarly situated locksmiths that performed work within the City of Chicago as covered employees for a covered employer, as alleged herein.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)     Judgment in the amount of unpaid overtime compensation found due at the rate of one and one-half times Plaintiffs' regular hourly rate of pay for all hours which Plaintiff  and members of the Plaintiff Class worked in excess of forty (40) hours per week;

(b)     Statutory damages in the amount of three times the amount of unpaid overtime;

(c)     Reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

(d)     Such other and further relief as this Court deems appropriate and just.

## COUNT VI

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE ILLINOIS WAGE PAYMENT AN COLLECTION ACT

1-62.   Paragraphs 1 through 62 of Count V are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 62 of this Count V.

63.     Plaintiffs, and members of the Plaintiff Class, were each an "employee" under the IWPCA, 820 ILCS § 115/2.

64.      Plaintiffs, and members of the Plaintiff Class, were not exempt from the IWPCA's protections, 820 ILCS § 115/1, *et seq*.

65.     Defendants were each an "employer" under the IWPCA, 820 ILCS § 115/2.

66.      During the course of employment of Plaintiff Hadden and the Plaintiff class, Defendants made deductions from Plaintiff's wages for traffic and parking tickets, tools and other similar costs.

67.     Such deductions (1) were not required by law; (2) were not to the benefit of Plaintiff Hadden or the Plaintiff Class; (3) were not in response to a valid wage assignment or wage deduction order; and (4) were not made pursuant to a valid and compliant authorization form, signed and dated by Plaintiff Hadden or members of the Plaintiff Class.

68.     Defendants violated the IWPCA, 820 ILCS 115/9, by making unauthorized and unlawful deductions from wages.

69.     Plaintiffs were damaged by Defendants' violation of the IWPCA.

70.     Plaintiffs seeks certification of the IWPCA violations alleged herein pursuant to Federal Rule of Civil Procedure 23.


WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding them:

(a)     A judgment in an amount to be determined at trial for all of the earned wages, agency withholding deposits and final compensation due to Plaintiffs;

(b)     Statutory interest damages in the amount of two percent (2%) per month of the amount of underpayments;

Respectfully submitted,

*Electronically Filed 05/20/2021*

/s/ John W. Billhorn
_____
John William Billhorn

John W. Billhorn
Samuel D. Engelson
Attorney for Plaintiffs, and all other
Plaintiffs similarly situated, known or
unknown.

BILLHORN LAW FIRM
53 West Jackson Blvd., Suite 401
Chicago, IL 60604
(312) 853-1450