**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JACOB HADDEN AND RAMON ACOSTA,** on behalf of themselves, and all other plaintiffs similarly situated, known and unknown,<br><br>Plaintiffs<br><br>v.<br><br>**QUICK KEY, INC., AN ILLINOIS CORPORATION, GAL DRUCKER, INDIVIDUALLY AND ORON NURIEL, INDIVIDUALLY**<br><br>Defendants.<br><br>///////////////////////////<br><br>**LUIS GARCIA AND ORLANDO PEREZ,** on behalf of themselves, and all other plaintiffs similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>**THE PROFESSIONAL LOCKSMITH, INC., AN ILLINOIS CORPORATION, ORON NURIEL, INDIVIDUALLY AND GAL DRUCKER, INDIVIDUALLY**<br><br>Defendants. | **No.** 1:21-cv-2746<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**No.** 1:22-cv-00987<br><br><br><br>**Hon. Matthew F. Kennelly**<br>**U.S. District Judge, Presiding**<br><br>Hon. Beth W. Jantz<br>Magistrate Judge<br><br>*JURY DEMAND* |

**PARTIES' JOINT MOTION FOR
COURT APPROVAL OF FLSA SETTLEMENT**

Plaintiffs in the matter of *Hadden, et al. v. Quick Key, Inc., et al*, Case No. 21-cv-2746 ("Hadden") and Plaintiffs in the matter of *Garcia v. The Professional Locksmith, Inc., et al.*, Case No. 22-cv-00987 ("Garcia"), both consolidated before this Court (the "Consolidated Cases") and Defendants Quick Key, Inc. ("QKI"), The Professional Locksmith, Inc. ("TPL"), Gal Drucker

("Druker") and Oron Nuriel ("Nuriel") (collectively, "Defendants") (collectively, the "Parties") jointly move this Court to approve the Parties' settlement of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.,* the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*, Chicago Minimum Wage Ordinance ("CMWO"), § 6-105-040 of the Municipal Code of Chicago and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS §115/1, *et seq*. The terms of the settlement are fair, reasonable, and resolve a *bona fide* dispute between the Parties. In support of their Motion, the Parties state as follows:

1. On May 20, 2021, Plaintiffs Jacob Hadden ("Hadden") and Ramon Acosta ("Acosta") filed this lawsuit alleging that Defendants violated the FLSA, IMWL, CMWO and IWPCA for failure to pay overtime wages by improperly classifying them as both a) salary-exempt and b) independent contractors. Dkt. 1.

2. On August 6, 2021, QKI answered the Complaint. Dkt. 14.

3. QKI denied the allegations and asserted they appropriately compensated Plaintiffs and that the claimed salary exemptions and independent contractor designations were proper.

4. On October 14, 2021, Plaintiffs filed their Unopposed Motion for Stage-One Conditional Certification of FLSA Collective Action. Dkt. 22. This Court granted Plaintiffs' unopposed Motion. Dkt. 23.

5. Over the course of the opt-in period, four (4) additional Plaintiffs joined the case. Dkt. 27, 28.

6. On February 14, 2022, Plaintiffs Garcia and Perez filed a near-identical lawsuit to *Hadden* against the TPL Defendants, which also included Defendants Druker and Nuriel. *Garcia* Dkt. 1.

7. On May 2, 2022, TPL answered the Complaint. Dkt. 13.

8. TPL denied the allegations and asserted they appropriately compensated Plaintiffs and that the claimed salary exemptions and independent contractor designations were proper.

9. On May 2, 2022, TPL filed an unopposed motion to consolidate *Garcia* with *Hadden*, which this Court granted. Dkt. 13, 15. See also *Hadden* Dkt. 35.

10. On June 2, 2022, the TPL Plaintiffs filed their Unopposed Motion for Stage-One Conditional Certification of FLSA Collective Action. Dkt. 16. This Court granted Plaintiffs' unopposed Motion. Dkt. 18.

11. No additional Plaintiffs joined the action via the *Garcia* notice.

12. Once the TPL notice period ended, all Defendants produced relevant documents to Plaintiffs so that that Parties could engage in settlement discussions.

13. After approximately six (6) months of negotiations, which included several conferences between counsel and numerous offers and counteroffers, the Parties reached settlement of all claims across the Consolidated Cases.

14. Prior to reaching a settlement, counsel for Plaintiff and Defendants conducted thorough and exhaustive investigations into the merits of and defenses to the potential claims through extensive informal discovery, where Defendants produced significant volumes of documents, spreadsheets, and other records and data available to them and in their possession (including time and pay records, Plaintiffs' employee files, etc.).

15. With this information, all Parties had the ability to fully analyze the claims of Plaintiffs and to conduct and exchange damage calculations for Plaintiffs. Therefore, the Parties have sufficient information to agree to a settlement.

16. The Parties have exchanged information and documents and engaged in settlement negotiations over the course of about six (6) months. Plaintiffs and Defendants exchanged several

3

settlement proposals and counteroffers. Eventually, the Parties agreed to a settlement, which includes resolution of Plaintiffs' damages and Plaintiffs' attorneys' fees. The settlement contemplates all damage components, including underlying unpaid wages and overtime, FLSA liquidated damages, IMWL treble damages and statutory interest and CMWO treble damages.

17.     The total Settlement Amount is $92,500, inclusive of attorneys' fees and costs, as specified in Section 1 of the Settlement Agreement. The proposed Settlement Agreement contains mutual releases of claims (which provides additional benefit to Plaintiffs), and the Parties seek dismissal of the entire lawsuit, initially without prejudice at the time the Court enters an order approving this settlement, and which will automatically convert to dismissal with prejudice thirty (30) days after delivery of the Settlement Amount to Plaintiffs' counsel.

18.     Copies of the executed Settlement Agreements are attached hereto as group **Exhibit 1**.

19.     Court approval of FLSA settlements is necessary to effectuate a valid and enforceable release of FLSA claims asserted. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Larkin v. CPI Corp.*, No. 10-cv-411-wmc, 2011 U.S. Dist. LEXIS 127680, *2 (W.D. Wis. Nov. 3, 2011); *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Under the FLSA, employees may settle their claims if the parties agree on the terms and the court approves the settlement as "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Larkin*, 2011 U.S. Dist. LEXIS 127680, at *2 (*citing Lynn's Food Stores, Inc.*, 679 F.2d at 1355); *see also Hernandez v. Cameo Invs., LLC*, No. 19-cv-356-wmc, 2019 U.S. Dist. LEXIS 186445, *3 (W.D. Wis. Oct. 28, 2019).

20.     If a settlement in a FLSA suit reflects a reasonable compromise, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation."

4

*Lynn's Food Stores, Inc.*, 679 F.2d at 1354. A presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a contested FLSA case resulting in settlement as an indication of fairness).

21. In determining whether a settlement is fair and reasonable, courts consider non-exclusive factors such as: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among [a]ffected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 U.S. Dist. LEXIS 35941, at *9 (N.D. Ill. Feb. 26, 2020) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)).

22. The Parties' settlement is fair and reasonable and meets the applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, the uncertainties for a favorable outcome, and range of reasonableness of the settlement in light of the best possible recovery. The Parties recognized the risks inherent in proceeding with the litigation. Defendants recognized its potential exposure if Plaintiffs prevailed at trial. Plaintiffs recognized the risk that they could lose on summary judgment or at trial and not recover all or any alleged damages. The settlement is also reasonable given that the Parties reached a resolution prior to completion of fact discovery. *See*, *e.g.*, *Young*, 2020 U.S. Dist. LEXIS 35941, at *13 ("Early resolution of claims is encouraged by district courts.").

23. Additionally, the settlement is within the range of possible recovery. As in many wage and hour claims, the precise nature and amounts of recoverable damages are uncertain. Here, even if a trier of fact ultimately found liability, a range of possible damages existed depending on

factors including, but not limited to, the number of alleged overtime hours worked, the amount of Plaintiffs' alleged damages, the Parties and their witnesses' credibility, testimony, Defendants' knowledge, willfulness and good faith, and whether the statute of limitations of the federal FLSA claim should be extended to three years and/or if FLSA liquidated damages should be assessed.

24. Should this matter have continued in the absence of a negotiated resolution, the Parties may have engaged in extensive discovery as to Plaintiffs' claims and Defendants' defenses to those claims. The Parties may potentially have moved for summary judgment and, to the extent any such dispositive motions were denied, the case would have proceeded to trial. If Plaintiffs prevailed on their claims, Defendants would potentially be faced with the prospect of a verdict against them and the obligation to pay damages, attorneys' fees and costs. If Defendants prevailed, Plaintiff faced dismissal of their claims and no recovery.

25. The Agreement is the product of arm's-length negotiations by Plaintiffs and Defendants, with both sides represented by experienced counsel during the proceedings. It provides relief to Plaintiff and eliminates the risks the Parties would bear if this litigation continued.

26. The attorney fee-shifting principles of the FLSA, IMWL and IWPCA have been honored in these negotiations and this settlement and are reflected in the Agreements upon which the Parties seek approval. After extensive negotiations, the Parties have fully resolved all issues related to Plaintiffs' attorneys' fees and costs with Defendants, as reflected in the attached Settlement Agreements. Defendants have agreed to pay Plaintiff's' counsels' lodestar fee of

$41,811.16.[1] This amount was achieved by way of ongoing negotiations and good faith effort to resolve the case by way of settlement. This amount includes Plaintiffs' counsels' costs.

27. Furthermore, the lodestar fee paid by Defendants to Plaintiffs' counsel was separately negotiated without regard to Plaintiffs' compensation. *See Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (wherein the Court found that where fees are negotiated separate and apart from the compensation to Plaintiff, the court should approve the settlement).

28. Given these circumstances, a presumption of fairness should attach to the proposed settlement. *See, e.g.*, *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982) (to approve FLSA settlement, district court must conclude that it fairly and reasonably resolves a *bona fide* wage dispute and that the lawsuit provided the necessary adversarial context to protect the employee's interests from employer overreaching); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 9, 2001).

29. For all of these reasons, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute and approve the settlement.

WHEREFORE, Plaintiffs and Defendants respectfully request that this Court approve the Parties' negotiated settlement and Settlement Agreement and dismiss all of Plaintiffs' claims in this lawsuit, first without prejudice after Court approval of this settlement, and with prejudice thirty (30) days after Defendants tenders final payment to Plaintiffs and Plaintiffs' counsel as provided in the Settlement Agreement.

---

[1] Plaintiffs' counsels' lodestar fees were based on following hourly rates of Plaintiffs' counsel and paraprofessional: Jodi S. Hoare (paralegal), $145.00 per hour; Samuel D. Engelson (Associate Attorney), $300 per hour, and John W. Billhorn (Senior Attorney), $575 per hour. Plaintiffs' counsel respectfully requests that this Court approve these reasonable rates. These rates have been approved in this District by different Judges on several occasions, including just recently on May 11, 2022. See *Borek-Allison v. Atosa Catering Equipment, Inc.*, Case No. 21-cv-3779.

Dated: April 14, 2023

/s/ Samuel D. Engelson
Samuel D. Engelson
John W. Billhorn
Attorneys for Plaintiff
Billhorn Law Firm
53 W. Jackson St., Suite 1137
Chicago, Illinois 60604
*Attorneys for Plaintiffs*

s/ Thaddeus Harrell
Thaddeus Harrell
Dinsmore & Shohl LLP
222 West Adams Street, Suite 3400
Chicago, Illinois 60606
T: 312.372.6060
Thaddeus.harrell@dinsmore.com

*Attorneys for Quick Key, Inc., Gal Drucker and Oron Nuriel*

By: /s/ Walker R. Lawrence
    One of their Attorneys

Jonathan M. Weis – jweis@lgattorneys.com
Walker R. Lawrence - wlawrence@lgattorneys.com
Attorneys for Defendants
LEVIN GINSBURG
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601-2800
Telephone: 312.368.0100
Telefax: 312.368.0111
*Attorneys for The Professional Locksmith, Gal Drucker and Oron Nuriel*

8